UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| FORECAST SALES, a division of MCCOY INVESTMENTS, INC., | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) | 1:10-cv-01379-SEB-DML |
| | ) | |
| AXXIOM MANUFACTURING, INC., | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR TRANSFER**

This cause is before the court on Defendant Axxiom Manufacturing's ("Axxiom") motion to dismiss or transfer venue [Docket No. 18] filed December 19, 2010. Axxiom argues that the more appropriate venue for this *qui tam* claim is the Southern District of Texas and that it should therefore be transferred to that venue. Plaintiff Forecast Sales ("Forecast") responds that Axxiom has failed to meet its burden of establishing a need for transfer, claiming that transferring this action would only shift the inconvenience from Axxiom to Forecast and its third party witnesses. For the reasons detailed in this entry, we DENY Defendant's Motion to Dismiss or Transfer Venue.

*Factual Background*

Forecast, a division of McCoy Investments, Inc., is a company based in Indianapolis, Indiana, that produces aftermarket parts, including replacement parts for Schmidt Manufacturing abrasive blasting equipment. Schmidt Manufacturing is a

prominent brand name in the sandblasting industry. Forecast's line of products is registered under the "PIRATE BRAND" trademark.

Axxiom produces Schmidt Manufacturing and Axxiom Manufacturing brand abrasive blasting industry products ("Schmidt/Axxiom MFG"). It is incorporated in North Carolina but maintains its principal place of business in Fresno, Texas. The company's president, John K. Pirotte, is responsible for the overall management of Axxiom, including its product manufacturing and marketing decisions, its advertising decisions, and its business development activities. Axxiom employs various distributor companies throughout the country to market and sell its products. Mr. Pirotte owns residences in both Texas and North Carolina, and was served process in connection with the instant suit at his home in North Carolina.

Forecast's affiliate, IDS Blast Finishing ("IDS"), served as a Schmidt Manufacturing stocking distributor from approximately June 1997 until November 30, 2006. C.J. Theriac worked as an employee for IDS for more than four years until he resigned his position on October 16, 2008, and ended his employment on November 14, 2008. On December 3, 2008, Midwest Surface Prep, LLC ("Midwest") was formed as an Indiana limited liability company with Mr. Theriac as its registered agent. Midwest is the current distributor of Schmidt/Axxiom MFG products, which competes against IDS and Forecast's PIRATE BRAND products.

On November 17, 2009 Axxiom filed a lawsuit against Forecast in the United States District Court for the Southern District of Texas, Houston Division, Case No. 4:09-

cv-03735, alleging copyright infringement, unfair competition, and unfair business practices. The gravamen of Axxiom's allegations is that Forecast copied protected information from a written manual concerning Axxiom's products and used that information in its own manual. On October 29, 2010, Forecast filed the instant *qui tam* false marking lawsuit against Axxiom on its own behalf of itself and the United States, alleging that Axxiom was falsely marking its products with expired patent numbers, in violation of 28 U.S.C. § 292.

*Legal Analysis*

I. **Standard of Review**

The purpose of 28 U.S.C. § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Whitney v. Big Dog Holdings, Inc.*, No. 1:07-cv-1026, 2007 WL 3334503 at *2 (S.D. Ind. Nov. 7, 2007) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). That section provides that, "for the convenience of parties and witnesses, in the interest justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Transfer is appropriate under § 1404(a) where the moving party establishes that (1) venue is proper in the transferor district, (2) venue and jurisdiction are proper in the transferee district, and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice." *Whitney*, 2007 WL 3334503 at *2 (internal

citations omitted). The weight accorded each factor is committed to the sound discretion of the court. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

**II. Discussion**

The parties agree that venue is proper for adjudication of this action in either Indiana or Texas, so the only issue before the Court is whether a transfer of venue would be more convenient and in the interest of justice pursuant to § 1404(a).[1] Axxiom (as the movant) has the burden of establishing that the Southern District of Texas "is not just more convenient, but '*clearly* more convenient' than the Southern District of Indiana." *Whitney*, 2007 WL 3334503 at *3 (quoting *Coffey*, 796 F.2d at 220) (emphasis added). As mentioned above, "when making this determination, we consider the convenience of the parties, the convenience of the witnesses, and the interest of justice in light of all the circumstances of the case." *Id.*

**A. Convenience of the Parties**

An important factor in determining the convenience of the parties is the plaintiff's choice of forum and, as a general rule, "it is a longstanding principle that the plaintiff's choice of forum is entitled to '[a] large measure of deference.'" *Id.* at *4 (quoting *Chicago, R.I. & P.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955)). The parties,

---

[1] Axxiom proffers an alternative argument for dismissal, pursuant to Fed. R. Civ. Pro Rule 12(b)(3). However, the primary thrust of Axxiom's argument is that the proper venue for this action is Texas, not that the action should be dismissed. What's more, in making the argument for transfer, Axxiom concedes that venue is proper in the Southern District of Indiana. Therefore, the Court shall focus on Axxiom's primary argument, to wit, the motion to transfer, and hereby denies the motion to dismiss.

4

however, dispute the level of deference that should be accorded Forecast's choice of this forum in the case at bar. Axxiom cites *Simonian v. Monster Cable Products, Inc.*, No. 10-C-1269, 2010 WL 4822899 (N.D. Ill. Nov. 22, 2010), arguing that the plaintiff's choice of forum is not entitled to substantial deference in a false patent marking claim under 35 U.S.C. §292. *Id.* at *1. Axxiom contends that false patent marking claims are *qui tam* actions where the federal government is the real party in interest, and therefore the plaintiff's choice of venue is entitled to less weight. Forecast rejoins, citing *Whitney,* 2007 WL 4822899 to the effect that its choice of venue is in fact entitled to great deference because Forecast is located within this district and the alleged falsely marked products were purchased here. *Id.* at *5 (finding that the events giving rise to the action, such as the discovery, sale, and purchase of the items, occurred in the forum and gave the action a substantial and direct connection to the forum despite the fact that neither the plaintiff nor the defendant were located in the forum).

The false patent marking statute provides that "[a]ny person may sue for the penalty in which event one-half shall go to the person suing and the other to the use of the United States." 35 U.S.C. § 292(b). In *Simonian v. Oreck Corp.*, the court concluded that § 292(b) "constitutes a real *qui tam* statute because it sufficiently defines an offense against the public, provides a penalty for that offense, allows an uninjured, private party to pursue civil action for such an offense, and gives a portion of the award to that party." No. 10-C-1224, 2010 WL 3385465 at *2 (N.D. Ill. Aug. 23, 2010); *see also Zojo Solutions, Inc. v. Leviton Manu. Co., Inc.*, No. 10-C-881, 2010 WL 4257546 at *1 (N.D.

Ill. Oct. 20, 2010) (according a plaintiff's choice of forum "little weight" because its "action for false marking [was] a *qui tam* action in which the real party in interest is the United States.").

Although our research has not revealed any Seventh Circuit precedent holding the same, we find the reasoning in these cases persuasive. Accordingly, we hold that because 35 U.S.C. § 292(b) is a *qui tam* statute, Forecast's choice of venue is to be afforded slight deference rather than substantial deference. *See, e.g., id.* ("little weight" given to plaintiff/relator's choice of venue); *Monster,* 2010 WL 4822899 at *1 (relator "not entitled to substantial deference"); *Simonian v. Maybelline, LLC.*, No. 10-C-1615, 2010 WL 4257546 at *6 (N.D. Ill. Mar. 1, 2011) (*qui tam* plaintiff's choice of venue is afforded only "slight deference").

Axxiom argues that virtually all the evidence necessary to prove or disprove the elements of a false marking claim is located in Texas. This includes all of the relevant documents and people with information concerning Axxiom's business decisions, and all of the important decisions, including those regarding patent marking. In response, Forecast has not addressed Axxiom employees or Axxiom's business location in Texas, but instead focuses on Mr. Pirotte, Axxiom's president, noting that he is the key witness responsible for all of Axxiom's decisions and that he is a North Carolina resident. Thus, says Forecast, not all of Axxiom's decisions regarding patents were in fact made in Texas. Mr. Pirotte counters Forecast's claim stating that he owns residences in both locations and spends at least 80% of his time in Texas (Doc. 21 Ech. B "Pirotte

6

Declaration") but he concedes that he did accept service of this lawsuit in North Carolina (Doc. 10).[2]

Forecast claims this demonstrates that the key witness in this litigation travels frequently which would lessen the burden of participating in litigation in Indiana. To bolster its argument that the Southern District of Indiana is not an inconvenient venue, Forecast asserts that Axxiom is already required to come to Indianapolis for purposes of discovery for the Texas action. Further, Forecast claims that the evidence of its actions and relevant conduct regarding the alleged illegal conduct in the Texas action will come from its employees and documents in Indianapolis. It asserts that "by definition Forecast actions occurred in Indianapolis" and that "if Axxiom attempts to show that Forecast had access to Axxiom copyrighted works, it will have to investigate that in Indianapolis." Resp. at 7. While it may be true, as Forecast contends, that Axxiom will be required to travel to Indianapolis for discovery in the Texas action and thus will not be inconvenienced, Forecast's argument cuts both ways. Applying the same logic, it also is true that the relevant conduct and decisions regarding patent marking by Axxiom in the instant case occurred at its principal place of business in Texas. Thus, Forecast will no doubt be required to investigate in Texas where Axxiom's actions occurred. Because

---

[2]Plaintiff argues that facts asserted in the Reply concerning Pirotte's residences and Axxiom's sales figures are new facts and thus Plaintiff has filed a Motion for Leave to File a Surreply in Opposition of Defendant's Motion to Dismiss or Transfer. Defendant responds that these facts are simply reactive and do not constitute new facts. We find that the arguments made in the Motion to Dismiss or Transfer, Response, and Reply are sufficient and therefore <u>DENY</u> Plaintiff's Motion for Leave to File a Surreply.

Forecast's "claim stems from [defendant's] decision-making, it is defendant's evidence that will constitute the bulk of proof." *Zojo*, 2010 WL 4257546 at *2. Forecast also claims the falsely marked products were sold in Indianapolis, but "the relevant conduct leading to this lawsuit is not the final sale but rather the business decisions made at [Axxiom's] corporate offices to package, market, distribute, and even sell [blasting] products with expired patents." *Maybelline*, 2011 WL 814988 at *7.

"[W]hile it is true that the site of the allegedly infringing activity is entitled to some consideration in our analysis, it is not the only factor. Otherwise, the defendant would 'almost always be allowed to transfer the case to its home forum.'" *Whitney*, 2007 WL 3334503 at *4 (quoting *Aero Co. v. Bacou-Dalloz USA Safety, Inc.*, 2004 WL 1629566 at *2 (S.D. Ind. July 21, 2004)). It is not unfair to expect Axxiom, who sells its products nationally, to respond to litigation where it sells those products. *Id.* At *5. "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Research Automation, Inc., v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Taking all of the above factors into consideration, we find that the convenience of the parties does not favor transfer.

### B. Convenience of the Witnesses

The convenience of the witnesses is another important aspect of a venue analysis. Non-party witnesses do not possess the same motivations to appear at trial as party witnesses, and thus non-party witnesses factor more heavily in the analysis because they

may or may not be amenable to service in one venue over another. *Whitney*, 2007 WL 3334503 at *6. "[I]t can ordinarily be assumed that the parties will be sufficiently motivated to have their own employees or other allies appear for trial wherever it might take place." *Id.* (internal citations omitted). Both parties agree that the president of Axxiom, Mr. Pirotte, will be a key witness in this litigation. The parties disagree, however, on where precisely Mr. Pirotte resides: Forecast maintains it is in North Carolina; Axxiom while acknowledging that Pirotte owns residences in both locations, maintains that he spends the majority of his time in Texas. However, given his importance to the trial of this case, we can assume he will appear for trial wherever it occurs.

Axxiom asserts all of its "business decisions . . . are conducted in Texas by personnel located in Texas" but names only Mr. Pirotte as a potential witness. Motion at 3. In contrast, Forecast asserts various of its employees possess knowledge relevant to the alleged false patent markings. Doc. 20 Ech. 3 "McCoy Declaration." We regard these facts as tending to balance each other out. Forecast, does go further by arguing that it has non-party witnesses located in Indiana that it intends to call, mentioning specifically, Mr. Theriac and employees of Midwest Surface Preparation, a distributor for Axxiom products at competition with Forecast. Forecast maintains that they would be unable to subpoena these non-party witnesses, who reside in this district, if venue is transferred to Texas.

9

The subpoena power of the court to compel non-party employees to testify is one consideration in determining the convenience of the witnesses. *See, e.g.*, *Monster*, 2010 WL 4822899 at *2 (finding that the defendant's inability to compel witnesses to testify required transfer to a venue where service was possible). Forecast has specifically identified the non-party witnesses it intends to call (specifically competitors working as distributors for Axxiom). Axxiom has mentioned only Mr. Pirotte and other generally referenced "personnel located in Texas" as potential witnesses. A defendant must go "beyond vague generalizations" and "clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included" to support its contentions. *Heller Fin, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293-94 (7th Cir. 1989) (denying transfer of venue upon finding that the defendant "supplied nothing . . . containing facts tending to establish who (specifically) it planned to call or the materiality of that testimony") (emphasis in original). For these reasons, we conclude that the convenience of witnesses factor does not support a transfer of this cause to the Southern District of Texas.

### C.     Interests of Justice

"The 'interest of justice' is a separate component of a § 1404(a) transfer analysis, and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey*, 796 F.2d at 220 (internal citations omitted). The "interests of justice include such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try

the case." *Heller*, 883 F.2d at 1293 (citing *Coffey*, 796 F.2d at 221). The principal concern of this analysis, then, is the "efficient functioning of the courts." *Coffey*, 796 F.2d at 221.

Forecast referenced a comparison of the Judicial Caseload Statistics of the Southern District of Indiana and the Southern District of Texas, which reveals minor differences in the relative median times to trial and to disposition. These variations between the districts are insignificant, and thus do not favor one district over the other. Speedy trial considerations do not warrant transfer, therefore, especially since transferring this case would likely cause additional delay.

Axxiom also summarily asserts that this action should have been brought as a counterclaim in the Texas action, but entirely fails to develop this contention. Forecast maintains in contrast that the cases are not related, without developing its view either. The Court's review of both complaints reveals some similarities between the two but, upon close inspection, we find no link to demonstrate that these cases should be tried together.

The Texas case and the Indiana case do not arise from the same transaction or occurrence; they involve different property, and do not pertain to a patent or copyright issue common to both cases. The Texas action is based on copyright infringement of a written manual, while the case at bar asserts an alleged false marking of patent numbers on products. In addition, the cases are brought under different federal statutes. Thus, we find Axxiom's assertion unconvincing that Forecast's claim should have been brought as

11

a counterclaim. The two cases simply are not related.

Finally, we can think of no reason to conclude that a judge in the Southern District of Texas is more capable or better qualified than the undersigned in terms of overseeing this litigation. There are no facts presented which set the Southern District of Texas apart from the district in which the case now pends. "[B]ecause the false marking claim derives from federal law, both districts have comparable knowledge and experience for handling the case." *Maybelline*, 2011 WL 814988 at *9; *see also Zojo Solutions, Inc.*, 2010 WL 4257546 at *3 ("False marking involves issues of federal law, and [the N.D. Ill.] [is] no better able to apply the false marking statute than a federal district in New York."); *Monster*, 2010 WL 4822899 at *2 ("[J]udges in this judicial district are equally familiar with the law surrounding patents."). Thus, modesty aside, we view the Southern District of Indiana to be as well qualified as the Southern District of Texas to adjudicate this case. The interest of justice does not favor transfer.

**III.    Conclusion**

A party requesting a transfer to another venue must satisfy a heavy burden to justify the move. While it may be more inconvenient for Axxiom to litigate this case in Indiana, it has not made a convincing showing that a transfer to the Southern District of Texas would be *clearly* more convenient overall or that a transfer would more fully comport with the interests of justice. Therefore, for the reasons detailed in this entry, we DENY Defendant's Motion to Transfer or Dismiss.

IT IS SO ORDERED.

Date: __07/27/2011_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Michael C. Bartol
BOSE MCKINNEY & EVANS, LLP
mbartol@boselaw.com

Edward Ronald Goldman
RENDIGS FRY KIELY & DENNIS LLP
egoldman@rendigs.com

Joel T. Nagle
BOSE MCKINNEY & EVANS, LLP
jnagle@boselaw.com

Craig Eldon Pinkus
BOSE MCKINNEY & EVANS, LLP
cpinkus@boselaw.com

Jonathan P. Saxton
RENDIGS FRY KIELY & DENNIS LLP
jps@rendigs.com

William Shawn Staples
Stanley Frank & Rose, LLP
wsstaples@stanleylaw.com